BETTY ANN DELKER,

                **Plaintiff,**

   **-vs-**                             **Case No.  6:08-cv-1074-Orl-31GJK**

COMMISSIONER OF SOCIAL SECURITY,

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

TO THE UNITED STATES DISTRICT COURT

      Plaintiff Betty Ann Delker (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits.  *See* Doc. No. 1.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED and REMANDED.**

## I.      BACKGROUND FACTS

      Claimant was born on June 5, 1960, and she attended school through the ninth grade.  R. 78, 419. Claimant's past employment experience includes busing tables in restaurants, working as a dietary aid and as housekeeper.  R. 102, 108, 116-123, 420-424. Claimant alleges an onset of disability as of December 5, 2004.  R. 78.

      On May 6, 2001, while working at a restaurant, Claimant slipped on a wet floor, twisted, and fell against a wall.  R. 157.  The next day, Claimant presented to a walk-in clinic

complaining of pain in her hip, leg, back, and feet. R. 157. Claimant was diagnosed with multiple contusion injuries and pain in her leg and back. R. 157. On May 9, 2001, an x-ray of Claimant's right forearm revealed no significant abnormality and no signs of fracture of dislocation. R. 153. However, Claimant was restricted to no lifting, pulling or pushing with her right arm and provided with a splint. R. 156.

### Treating Physicians

### A. December 6, 2004 – January 18, 2005 – Dr. Ortolani, M.D.

On December 6, 2004, Claimant presented to Dr. John A. Ortolani, M.D. complaining of left facial pain, left neck pain, and right elbow/arm pain. R. 164. Physical examination revealed shooting pain and some tenderness in Claimant's jaw, reasonable flexion, extension, and rotation of the cervical spine, but paraspinal tenderness and spasms in the supraspinarus on the left side. R. 164. Claimant had equal strength in the upper extremities and no atrophy or fasciculations. R. 164. Dr. Ortolani's impression was neuralgic pain in the left jaw, cervical strain syndrome, and right elbow pain. R. 165. Dr. Ortolani placed Claimant in physical therapy. R. 165.

On January 18, 2005, Dr. Ortolani stopped physical therapy stating that Claimant, although not perfect, was doing better. R. 163. Dr. Ortolani reported that Claimant's "biggest problem at this time is anxiety." R. 163. Dr. Ortolani's notes state Claimant "is going through a divorce and she is moving. She is anxious, she is nervous, and she has trouble sleeping." R. 163. Dr. Ortolani prescribed Lortab for pain and BuSpar for anxiety. R. 163. The record does not contain any other records from Dr. Ortolani.

**B.  December 14, 2006 – January 3, 2007 – Dr. Cork, D.O.**

On December 14, 2006, Claimant presented to Dr. Steven D. Cork, D.O. complaining that her nerves were shot and stated she was trying to get on disability.  R. 248.  Dr. Cork's assessment was increased anxiety, depression, and COPD.  R. 248.  On January 7, 2007, Dr. Cork's assessment continued to be anxiety and depression, but also probable gastritis and possible bipolar disorder.  R. 247.  Dr. Cork's notes indicate that he prescribed Valium and Diazepam. R. 247.  The record does not contain any other treatment notes from Dr. Cork.

**C.  June 24, 2005 - Present– Halifax Dunn Health Center**

On June 24, 2005, Claimant presented to the Halifax Dunn Health Center complaining of flank pain and depression.  R. 204.  The handwritten notes show that a review of Claimant's symptoms revealed a history of "heavy drinking, alcoholism – shakiness, tremor, poor appetite – insomnia – poor concentration."  R. 204.  The impressions were alcohol withdrawal syndrome, depression, and anxiety.  R. 205.  Claimant received a prescription for Zoloft.  R. 205.  X-rays of Claimant's right flank revealed phlebolithic like calcifications in the pelvis.  R. 203.

On October 12, 2006, Claimant presented to the Emergency Room for a mental evaluation.  R. 256-57.  Claimant stated that she was unable to sleep due to anxiety and depression, and asked for some Valium to help her sleep.  R. 256.  Claimant was diagnosed with depression and insomnia.  R. 257.

On February 15, 2007, Claimant's mammogram revealed a lobulated mass in the right breast, and on April 11, 2007, Claimant underwent a right breast lumpectomy, excision of the right axillary sentinel lymph nodes and the posterior margin.  R. 234, 356.  Pathology confirmed the mass was cancerous.  R. 321.  Notes from Dr. Boon Y. Chew, M.D., Claimant's treating

oncologist, show that Claimant was "very anxious and frustrated," and "[s]he does not have much social support." R. 322. "She has loss of appetite and has lost some weight due to some increased stress." R. 322. Dr. Chew's notes show that Claimant has a history of asthma, arthritis involving the right knee, ADHD, depression and anxiety which are being treated by Dr. Oh. R. 322. Additionally, a review of Claimant's systems states she has chronic muscle pain, joint pain, anxiety and suffers from depression. R. 322. On May 1, 2007, Dr. Chew's notes show that Claimant quit drinking in January of 2007, but she "started drinking again yesterday." R. 322.

On May 7, 2007, Claimant agreed to undergo chemotherapy treatment. R. 318. Dr. Chew's notes show that Claimant was highly anxious and stressed. R. 318. Claimant was having difficulty concentrating and remembering. R. 318. Dr. Chew's notes state that due to Claimant's anxiety and elevated stressors, she drank beer the night before. R. 318. Dr. Chew referred Claimant to a psychological counselor, Betty Blevins, for support during Claimant's chemotherapy treatment. R. 318. On May 9, 2007, Ms. Blevins' notes show that Claimant reported she has a history of alcoholism, ADD, depression, anxiety, possible bipolar disorder, and nicotine addiction. R. 317. Claimant reported that she was "very regretful" that on April 30, 2007, she drank beer after abstaining from any alcohol since January of 2007. R. 317. Ms. Blevins encouraged Claimant to consider the event a lapse rather than a relapse, and supported her decision to return to sobriety. R. 317. Ms. Blevins notes show that Claimant remained very anxious throughout the session. R. 316-17. On May 22, 2007, Claimant reported that she got angry at her ex-husband, who she reported is emotionally abusive and an alcoholic, and bought a six-pack of beer and "'got a buzz on.'" R. 316. Claimant stated that she did not consider herself an alcoholic. R. 316.

On June 5, 2007, Claimant presented for a post surgery follow-up appointment. R. 390-92. Claimant appeared alert but had "the smell of alcohol." R. 390. The doctor reported the following:

> Her main problem appeared to be social. She was arrested and incarcerated for one day and stated that she does not know why she was arrested and handcuffed. She stated the arm pain is because of her carpal tunnel syndrome exacerbated by the handcuff. She started smoking and drinking heavily again. She averages a least a six pack a day and also stated she binged drank.

R. 390. Claimant was told to stop drinking before beginning chemotherapy. R. 391.

### D. January 11, 2007 – Present – Dr. Oh, M.D.

On January 11, 2007, Claimant presented to Dr. Stephen Oh, M.D., a psychiatrist, complaining of insomnia, depression, anxiety, and stress. R. 239. Claimant stated that she was diagnosed with depression when she was young and she currently takes Valium. R. 239. Claimant reported that she suffers from panic attacks, but less than two or three per week. R. 239. Claimant stated that she has difficulty making good decisions, has decreased energy, poor self confidence and decreased concentration. R. 239. Claimant stated that she consumes a six pack of beer in one evening. R. 240. Claimant's mental status examination indicated that she was cooperative, made good eye contact, had an anxious mood and displayed a coherent thought process, but her attention and concentration were impaired and her judgment was only fair. R. 243. Dr. Oh's diagnosis indicated generalized anxiety disorder, ADHD, and alcohol abuse. R. 244. Dr. Oh recommended a bipolar evaluation, exercise, and no alcohol consumption. R. 244.

On February 12, 2007, Claimant returned for a follow up with Dr. Oh. R. 238. Claimant reported that she was walking for exercise, but her knee limits that and she still felt unhappy, irritable, and confused. R. 238. Dr. Oh's mental status examination revealed that Claimant

displayed intact impulse control, good judgment and good insight. R. 238. On March 12, 2007, Claimant presented to Dr. Oh complaining that she is still easily irritable and anxious. R. 405. Claimant continued to display intact impulse control, good judgment, and good insight. R. 405. Dr. Oh's assessment simply states that Claimant was "aggressive." R. 405. On April 16, 2007, Claimant presented to Dr. Oh after receiving her breast cancer diagnosis. R. 404. Dr. Oh's mental status examination remained the same, and his assessment was that Claimant was "doing well." R. 404. On May 7, 2007, Claimant presented stating that she was "overwhelmed by stress" regarding her cancer treatment. R. 403. Dr. Oh's notes show that Claimant was very anxious and irritable. R. 403. Claimant's showed poor concentration and displayed only fair judgment and insight. R.403. Dr. Oh's handwritten assessment reflects anxiety, but is otherwise illegible. R. 403.

On May 30, 2007, Dr. Oh completed a Mental RFC assessment. R. 311-14. Dr. Oh opined that Claimant was markedly limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and maintain regular attendance; work in coordination with others without being distracted; make simple work-related decisions; ability to complete a normal work day and workweek without interruptions from psychologically based symptoms; accept instructions and respond to criticism from supervisors; get along with coworkers or peers without distracting them; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. R. 311-12. Dr. Oh opined that Claimant was moderately limited in her ability to: remember locations; understand and remember very short and simple

instructions; carry out very short and simple instructions; sustain an ordinary routine without special supervision; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions. R. 311-12. There were no areas where Dr. Oh opined that Claimant would not be moderately or markedly limited. R. 311-12.

On June 29, 2007, Claimant presented to Dr. Oh while undergoing chemotherapy and complained of being tired and weak, in a lot of pain, and losing her hair. R. 402. Dr. Oh's mental status examination showed that Claimant's mood was depressed, she displayed poor concentration, fair judgment, and fair insight. R. 402. Dr. Oh's assessment was depression. R. 402.

On July 13, 2007, three days after the hearing, Dr. Oh completed a Medical Source Statement of Ability to Do Work Related Activities (Mental). R. 407-08. Dr. Oh opined that Claimant was extremely limited in her ability to carry out detailed instructions, markedly limited in her ability to understand and remember detailed instructions and make judgments on simple work related decisions, moderately limited in her ability to carry out simple instructions, and slightly limited in her ability to understand and remember short simple instructions. R. 407.[1] Dr. Oh stated that he based these opinions on Claimant's "severe attention deficit disorder, panic disorder, and impulse control disorder." R. 407. Dr. Oh further opined that Claimant was markedly limited in her ability to respond appropriately to work pressures and changes in routine work settings, moderately limited in her ability to interact with the pubic, supervisors, and coworkers. R. 408. Dr. Oh stated that he based these opinions on Claimant's anxiety,

---

[1] The form defines markedly as "a serious limitation in this area." R. 407.

7

nervousness, and irritability. R. 408. Dr. Oh also concluded that Claimant's alcohol abuse does not contribute to any of Claimant's limitations. R. 408.

On January 31, 2008, Dr. Oh completed a questionnaire regarding Claimant's condition. R. 409-11. Dr. Oh opined that Claimant's impairments have existed since December 5, 2004, and that alcoholism is not a contributing factor to a determination that Claimant cannot work. R. 410-11.

**Consultative Examinations**

**A. May 17, 2005 – Dr. Oatley, Ph.D. – Psychological Evaluation**

On May 17, 2005, Claimant underwent a disability related psychological evaluation conducted by Dr. J. Jeff Oatley, a clinical psychologist. R. 166-68.[2] Dr. Oately's report indicates that he reviewed Dr. Ortolani's records and a 2004 record from an unknown source showing Claimant was diagnosed with anxiety and asthma. R. 166. Claimant reported that she suffers from right arm pain and anxiety which she has had most of her life. R. 166. Regarding her past psychiatric history, Dr. Oatley's report states:

> [Claimant] reports she went to Stewart Marchman overnight, but they discharged her because "she knew her problems and what she needed to do". She has received no outpatient counseling from any mental health professional. She has received psychopharmacological treatment from primary health care providers, who have prescribed anxiolytics. . . . She reports taking Xanax on prn basis when she is stressed.

R. 166. Regarding Claimant's history of alcohol use, Dr. Oatley's report states:

> She reports long standing alcohol problems. She drinks nightly, though she reports she did not drink last night due to instructions from the Office of Disability Determinations. Two nights ago she had 4 beers. . . . She reports that Dr. Parnell found a problem with her liver and told her to quit drinking.

---

[2] Dr. Oatley is clinical psychologist, not a medical doctor.

R. 166-67. Dr. Oatley made the following pertinent findings as to Claimant's current mental status:

> 1.     Mood and affect: No appetite problems are reported. A variable sleep pattern is reported. A normal range of emotions is reported. She reports getting disgusted with herself at times. She always feels anxious or bored. She reports feeling depressed and crying sometimes for no reasons. Suicidal ideation is reported "occasionally", but intent is denied. In this office, mood was nervous. Self-esteem appears to be low. Energy level is normal. . . .
>
> 3.     Concentration: She declined to count backwards from 100 by 3's. She did count forwards by 3's to 30 correctly in 24. She named 9 animals in 15. She spelled WORLD forwards correctly, but no backwards. She was able to follow the conversation without difficulty. No concentration deficits are noted. . . .
>
> 5.     Memory: She correctly recalled 5 sequential numbers. She recalled what she had for breakfast this morning and could give a good medical and employment history. She correctly recalled four items from a list of four items 10 minutes later. No severe memory deficits are noted. . . .
>
> 7.     Behavioral observations: Gait was balanced and speech was easy to understand. She was dressed appropriately and clean in appearance. Attention span and activity level was appropriate. She was cooperative with the examination and attitude was pleasant. She signed her name in cursive with her right hand with her 2nd finger on the top of the pencil.

R. 167-68. Dr. Oatley diagnosed Claimant with alcohol dependence "as indicated by long standing alcohol abuse, increase in tolerance to alcohol, and continued drinking despite possible liver problems," alcohol induced anxiety disorder "as indicated by anxiety associated with chronic and continuous drinking," nicotine dependence, asthma, rule out carpal tunnel right arm, and rule out cirrhosis of the liver. R. 168. Dr. Oatley's prognosis was guarded due to "continued alcohol consumption." R. 168. Dr. Oatley reported that Claimant is capable of managing her own funds. R. 168. Dr. Oatley found no limitations in Claimant's activities of daily living. R.

168.  Regarding social function, Dr. Oatley stated that Claimant does not want to talk with anyone.  R. 168.  Regarding concentration and task persistence, Dr. Oatley stated that Claimant self reported that she has no difficulty completing routine house chores.  R. 168.

### B.  May 24, 2005 – Dr. Shoemaker, D.O. – Orthopedic Evaluation

On May 24, 2005, Claimant presented to Dr. James, R. Shoemaker, D.O. for a disability related orthopedic evaluation.  R. 183-89.  Dr. Shoemaker's note reveal that Claimant reported smoking 1 ½ packs of cigarettes a day for 29 years and drinking a 6-pack of beer daily.  R. 183.  Dr. Shoemaker notes state that Claimant reported the following:

> In reference to her right arm pain, she was well until October or November of 2004, when she developed the onset of pain of her right upper extremity.  She came under medical care, but she is unaware of her exact diagnosis.  She states, however, she was found to have carpal tunnel syndrome at one point.  She does complain of some cervical spine stiffness, cervical spine pain as well.  She has some grip loss of her right hand.  On detailed questioning, she has difficulty opening jars.  She has no difficulty buttoning her clothes, no difficulty opening doors, and she does not have any significant difficulty with her handwriting.  She has no pain on [range of motion] of her right elbow.

R. 183.  Upon physical examination, Claimant's mouth and throat were normal and her back and spine were unremarkable.  Physical examination of Claimant's upper extremities revealed the following:

> [F]ull [range of motion] of all upper extremity joints including the wrists, elbows and shoulders.  No evidence of cyanosis or clubbing.  Grip strengths are 5/5 bilaterally and fine manipulation is within normal limits.  Right upper extremity examination shows tenderness about the lateral aspect of her right elbow, about the lateral epicondyle.  Tinel's sign is negative.  DRT's are 2+.  Sensory examination is intact to pinprick.  Forearm circumferential measurements are 23 cm bilaterally.  Finger-to-thumb opposition is intact.  She does have increased pain about the right elbow with dorsiflexion of her wrist against resistance.

R. 184.  Physical examination of Claimant's lower extremities was unremarkable.  R. 184-85.

Dr. Shoemaker's final impressions were lateral epicondylitis of right elbow, history of right arm

pain, and history of carpal tunnel syndrome right.  R. 185.

### C.  March 2, 2006 – Dr. Friedenberg, Ph.D. – Psychological Evaluation

On March 2, 2006, Claimant underwent a psychological evaluation, at the request of her

attorney, with Dr. William P. Friedenberg, Ph.D.  R. 302-03.  Dr. Friedenberg's report contains

the following history:

> [Claimant] was married in 2002 and divorced in 2004.  She has
> one adult son with home she currently resides.  [Claimant] takes
> care of her personal hygiene with some need for reminders.  She is
> able to do all of the necessary household chores.  Daily activities
> include watching TV, reading the newspaper a little, and listening
> to music.  She plays bingo and goes to the dog track.  [Claimant]
> takes care of a pet fish and parakeet.  She walks as her only
> exercise.  [Claimant] has a few friends with whom she socializes.
> She has difficulty getting along with others because she resents
> being told what to do and she subsequently "goes off on them."
> [Claimant] does not belong to any social groups or clubs, and she
> does not attend Church.  [Claimant] has never had a valid driver's
> license.  She is able to use public transportation on her own.  She is
> able to shop by herself. [Claimant] reported that she first drank
> alcohol when she was 24 years old.  She denied any history of
> alcohol abuse.  She currently drinks up to a sex-pack [sic] of beer
> when she is upset.  Her last consumption of alcohol was a couple
> of beers two or three days ago. . . . Despite her statement that she
> has never had a problem with alcohol abuse, [Claimant] did
> voluntarily enter a substance abuse treatment program for
> evaluation of mixed substance abuse about fifteen years ago,
> although, . . . she apparently received no treatment.  She has never
> attended any 12-step group meetings. . . . She reported no history
> of trouble with the law.

R. 303.  Dr. Friedenberg's diagnosis was anxiety disorder, depressive disorder, rule out bipolar

disorder, polysubstance abuse dependence in sustained full remission, and rule out personality

disorder. R. 304.[3] Dr. Friedenberg completed a Mental RFC opining that Claimant was markedly limited in her ability to interact appropriately with the general public and the ability to accept instructions and respond appropriately to criticism from supervisors. R. 305-06. Dr. Friedenberg opined that Claimant was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities in a timely manner; work in coordination with others without be distracted by them; complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods; get along with co-workers; and to respond appropriately to changes in the work setting. R. 306.

**Non-Examining Agency Consultants**

**A. May 23, 2005 – Psychiatric Review Technique – Dr. Davis, Ph.D.**

On May 23, 2005, a state agency psychologist, Dr. Leif E. Davis, completed a Psychiatric Review Technique (the "PRT") based on a records review. R. 169-82. The review of Claimant's systems extended from the alleged onset date through May 23, 2005. R. 169. Dr. Davis opined that Claimant has no severe impairments, but a coexisting nonmental impairment that required referral to another medical specialty. R. 169. Dr. Davis concluded that Claimant suffers from a substance addiction disorder. R. 169. Notably, Dr. Davis found that Claimant did not suffer from an anxiety related disorder. R. 169, 174. Dr. Davis opined that Claimant suffers from alcohol dependence and alcohol induced anxiety disorder. R. 177. The PRT asked Dr. Davis to list the "[p]ertinent symptoms, signs, and laboratory findings that substantiate the

---

[3] Polysubstance abuse dependence is defined by a person who during the same twelve month period used at least three groups of substances, not including caffeine or nicotine, but no single substance predominated. *See* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., (2000) (also known as the DSM-IV-TR).

presence of this impairment," but Dr. Davis did not provide any finding upon which he based his opinion. R. 177. The undersigned notes that Dr. Davis's findings mirror the diagnoses of Dr. Oatley. *See* R. 168. Furthermore, the PRT does not state what records, if any, Dr. Davis reviewed to form his opinions.

The PRT also asked Dr. Davis to rate the functional limitations Claimant suffers as a result of her impairment(s). R. 179. Dr. Davis opined that Claimant's impairments result in mild restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 179. The PRT concludes with the following notes from Dr. Davis:

> This [C]laimant is a 44-year-old female who is alleging disability due to carpal tunnel syndrome, nerve damage to mouth and neck, depression, anxiety, asthma, and an arm injury. The [C]laimant has a ninth-grade education. She has spent one overnight stay as [sic] a drug treatment facility, has had no outpatient treatment and is currently being treated with medication by her primary care physician.
>
> MSE: mood and affect should [sic] the normal range of emotions. Claimant had a [sic] average fund of knowledge with no incoherent speech or loosening of associations. No concentration problems noted. The [C]laimant was alert and orientated. Memory was normal. No hallucinations of [sic] delusions noted. Attention was appropriate for the situation. Diagnoses included alcohol dependence, alcohol induced anxiety disorder, nicotine dependence.
>
> The [C]laimant cares for her 20-year-old son by preparing meals. The [C]laimant does light housekeeping and laundry. She's able to handle the household finances. She takes the bus to grocery shop. She goes out every day. [C]laimant socializes with her son her ex, and another friend. She goes to the store two to three times per week.
>
> The [C]laimant has significant alcohol problems and has a long history about all use and abuse. However, [C]laimant has only

13

mild problems with [concentration, persistence, and/or pace], she socializes with those in her environment, and is able to maintain a household and care for her adult son. From a mental perspective this [C]laimant is able to function routinely in simple repetitive tasks.

R. 181.

### B. October 10, 2005 – PRT – Dr. Green, Ph.D

On October 10, 2005, a state agency psychologist, Dr. Pamela D. Green, completed a second PRT based on a records review. R. 211-24.[4] Dr. Green opined that Claimant has no severe impairments, but a coexisting nonmental impairment that required referral to another medical specialty. R. 211. Dr. Green also concluded that Claimant suffers from a substance addiction disorder. R. 211. Dr. Green did not find any anxiety related disorder(s). R. 211, 216. Dr. Green opined that Claimant suffers from alcohol dependence and alcohol induced anxiety disorder. R. 1219. The PRT asked Dr. Davis to list the "[p]ertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment," but, like Dr. Davis, Dr. Green did not provide or list any of the medical records or findings upon which she based her opinion. R. 219; *see also* R. 177.

The PRT also asked Dr. Green to rate the functional limitations Claimant suffers as a result of her impairment(s). R. 221. Dr. Green opined that Claimant's impairments result in mild restrictions of activities of daily living, no difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 221. The PRT concludes with the following notes from Dr. Green:

Below is a summary of the review of the entire record, with particular attention being given to psychiatric diagnosis and treatment, and the [Claimant's] report of adaptive functioning. . . .

---

[4] The PRT does not state the time frame to which it refers. R. 211.

This [Claimant] is a 45 y.o. with 9th gd ed, wk: waitress, housekeeping, alleges on recon: depression, anxiety, CTS, bilateral knee pain, asthma nerve damage to neck and mouth.

Psy HX: MER indicates the [Claimant] had brief tx at a drug tx facility. No formal mh tx. The [Claimant] received psy meds per PCP.

Psy ce 5/05 dx: alcohol dep/abuse, alcohol Induced Anxiety d/o. MSE: wnl, memory intact no psychosis.

ADL: Care for older son. Cooks, light hh chores, money mgnt, uses public transport, shops, socializes some travel outside home.

Update: Review MER physical notes suggest some alcohol withdrawal sxxs. ADL: personal care wnl, handle stress well, reports some depression with anx since 1970's responds to meds.

Based upon the mer, the [Claimant] has sxs of alcohol induced anxiety. No severe pathology indentified.

R. 223.

### C. Undated/Unsigned State Agency RFC

The record contains an undated and unsigned RFC assessment from a state agency consultant. R. 190-97. The state agency consultant made a primary diagnosis of lateral epicondylitis right elbow and a secondary diagnosis of history of right arm pain. R. 190. The state agency consultant opined that Claimant's conditions and symptoms resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum of 50 pounds; (2) frequently lifting and/or carrying a maximum of 25 pounds; (3) standing and/or walking about 6 hours in an 8 hour workday; (4) sitting with normal breaks for about 6 hours in an 8 workday; and (5) no limitations in pushing and/or pulling. R. 191. The state agency consultant based his/her conclusions on Dr. Shoemaker's consultative examination. R. 191. The

state agency consultant opined: that Claimant impairments cause no postural, visual, communicative, or environmental limitations; that Claimant would have limited manipulative limitations in her right arm due to elbow pain; and that Claimant's symptoms were "partially credible." R. 192-195.

### D. October 24, 2005 – RFC – Dr. Ravipati, M.D.

On October 24, 2005, Dr. Murthy Ravipati, M.D., a state agency consultant completed an RFC assessment based on a review of the record. R. 225-32. Dr. Ravipati made a primary diagnosis of chronic right elbow pain and a secondary diagnosis of chronic left jaw pain. R. 225. Dr. Ravipati opined that Claimant's conditions and symptoms resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum of 50 pounds; (2) frequently lifting and/or carrying a maximum of 25 pounds; (3) standing and/or walking about 6 hours in an 8 hour workday; (4) sitting with normal breaks for about 6 hours in an 8 workday; and (5) no limitations in pushing and/or pulling. R. 226. Dr. Ravipati based his/her conclusions on Dr. Shoemaker's consultative examination. R. 226. Dr. Ravipati opined that: Claimant impairments would cause occasional limitations in climbing ramps, stairs, ladders, ropes, and scaffolds, but frequently be able to balance, stoop, kneel, crouch, and crawl; Claimant would be limited in reaching in all directions, including overhead due to her history of right elbow pain and possible epicondylitis; Claimant's impairments would cause no visual, communicative, or environmental limitations, except that Claimant should avoid concentrated exposure to hazards; and Claimant's symptoms are attributable to a medically determinable impairment and Claimant's allegations were "partially credible," but the severity or duration of the symptoms is

disproportionate to the expected severity on the basis of the medically determinable impairment. R. 227-30.

## II.     PROCEEDINGS BELOW

On January 21, 2005, Claimant filed the present application for a period of disability and disability insurance benefits alleging disability due to carpal tunnel syndrome, knee problems, and nerve damage in her mouth and neck. R. 101. Claimant remained insured through December 31, 2009. R. 83. Claimant's application was denied initially and upon reconsideration. R. 52-55, 62-64. On December 30, 2005, Claimant requested a hearing before an Administrative Law Judge (the "ALJ") and, on July 10, 2007, a hearing was held before the Honorable John D. Thompson. R. 49, 414-65.

At the hearing, Claimant was represented by Richard Swartz, Esq. R. 414. Claimant and Richard Hickey, a Vocational Expert (the "VE"), testified at the hearing. R. 414-65. Claimant testified to the following in pertinent part:

- She is able to read, write, and speak English "to a limit." She can add and subtract simple numbers, and she can write short notes;

- She has never had a driver's license;

- She last worked busing tables;

- She regularly lifted trays or bus pans weighing between 20 and thirty pounds;

- She has been unable to work since December of 2004 because her right arm and knee became progressively worse;

- She injured her arm in 2002 or 2003 when slipped on a wet floor and fell into a wall at work;

- She went back to work after injuring her arm "because I had to work," but she was only able to work with one arm;

- She was treated in 2004 by Dr. Ortolani for her neck, knee, arm, and mouth problems;

- Dr. Ortolani treated her knee with laser and ultrasound with no relief; prescribed medication with no relief; and then Dr. Ortolani stated he could no longer treat her;

- She has not received treatment for her knee or elbow since she stopped seeing Dr. Ortolani, but Drs. Roe and Chew prescribed Lortab for her knee pain;

- She stopped drinking on June 5, 2007;

- She does not remember when she started drinking;

- She has never been arrested for alcohol related problems;

- She never drinks anything stronger than beer;

- She currently receives treatment for her depression at the Halifax Dunn Health Center. She has been prescribed Xanax for her depression, but she does not like Xanax and instead takes Valium prescribed by Dr. Oh;

- She began mental health treatment with Dr. Oh in January of 2007, and he diagnosed her with depression, anxiety, stress, anger, and attention deficit disorder;

- She received no previous mental health treatment;

- She has suffered from depression since she was twelve or thirteen years old;

- She has anger problems, but has never attended anger management classes, and she has mood swings;

- Her memory is starting to fade;

- She has problems concentrating;

- She was diagnosed with cancer in her right breast, underwent a lumpectomy on May 11, 2007, is receiving chemotherapy from Dr. Chew; and will be placed on radiation;

- She experiences pain in the surgical area, numbness under her arm all the time, and it hurts to reach;

- She began chemotherapy on June 11, 2007 and she has not had any alcohol since beginning chemotherapy;

- Dr. Chew also prescribes medications for her nerves, anxiety, and depression;

- She was arrested in June over a disagreement about a pack of cigarettes, but no charges were filed;

- She uses public transportation frequently; does light cleaning; washes a few dishes; is cable of doing the laundry if she has to; likes to go to bingo, but cannot do that much anymore;

- She has never attended an AA meeting;

- She went to Stewart Marchman for alcohol treatment, but they released her the next day;

- She enjoys watching television;

- She does not really know her neighbors;

- She can lift maybe twenty pounds;

- She has problems sitting for long periods of time because she is a high strung person;

- She can sit for ten to fifteen minute before having to stand up;

- She can stand in one place for five or ten minutes;

- She walks for half an hour a day;

- She experiences the following side effects from the medications she is taking, including the chemotherapy: hair loss; constipation; and fatigue.

R. 414-50. The ALJ asked the VE the following hypothetical question:

> Assume I find a younger person 47 years old with a limited ninth . . . grade education, who's able to sit, stand, and walk at least six hours in an eight-hour day; lift and carry occasionally up to one-third of the workday, at least 20 pounds; and more frequently, up to two-thirds of the workday, 10 pounds or less; who can occasionally bend, stoop, crouch, crawl, kneel, and climb. In terms of reaching overhead with her right upper extremity, that's limited to occasional. She should work in a temperature-controlled work setting without exposure to temperature extremes or concentrated amounts of atmospheric pollutants such as dust, smoke, fumes, and the like. Such an individual has no other manipulative impairments other than the reaching overhead on an occasional

basis with the right upper extremity in terms or her ability to reach, handle, hold, finger, turn, grasp, and manipulate objects within the weight limits I've indicated. I see no problems in terms of her fine finger dexterity. She has no communicative problem in her ability to see, speak, and hear. In terms of mental limitations, she's obviously confined to the performance of unskilled types of work, because that was the nature of the work that she did in the past. It was all unskilled, so you don't get any transferable skills from doing unskilled work. So, she would be limited to the performance of unskilled work. But even barring that, her age alone being under 50, whether there's any transferable skills or not [is] not material to a finding of disability. She would certainly be able to understand, carry out, and remember simple, rote, repetitive one and two step operational tasks in response to oral or written directives, and be able to make simple work-related decisions on similar type tasks. In terms of getting along and interacting with members of the general public, responding to pressures in that type of unskilled work setting, demonstrating reliability, she would be able to . . . do those without significant difficulty. Her interaction should probably be limited to an occasional basis, up to one-third of the workday, with members of the general public, coworkers, and supervisors. With these limitations, and no others, would she be able to return to her past relevant work, either as she performed it or as it's customarily performed to the way the job is described . . .?

R. 456-57. The VE responded that given the hypothetical, the Claimant could return to her past relevant work as a bus person and cleaner. R. 457.

The ALJ then allowed Claimant's attorney to cross-examine the VE. R. 457. Claimant's attorney began to pose a different hypothetical question to the VE and the following exchange occurred:

ATT: Assume she's markedly limited in 12 areas psychiatrically by her treating physician, and I'll read these off to you with the [ALJ's] permission.
ALJ: No.
ATT: I'm looking at an RFC. Can I show it to him?
ALJ: No.
ATT: Or read it to him?
ALJ: No, because it's not going to be a proper question unless the term,

markedly, can be defined, and markedly is not defined on the form you make reference to. The form is otherwise deficient for the fact that no explanation is offered for any of the limitations given. It's just a simple check-off form which really doesn't offer any medical rationale to justify any of the limitations being offered. But - - -

ATT: In all due - -

ALJ: - - if you want to offer some sort of definition, which, again is not set forth on the form, so we don't know what your definition would necessarily jive with the definition that the person completing the form would have for that particular degree of limitation. So, that's another deficiency or defect in the form. But you can otherwise proceed, bearing that in mind.

ATT: I might answer, this is the Social Security Administration's form - -

ALJ: I don't care what it is. It doesn't define - -

ATT: 4734.

ALJ: I don't care what it is, Mr. Schwartz. That form is meant as a worksheet, okay? It's not meant to be an RFC form; it's meant for those psychologists who evaluate claims at the initial and recon level, to be worksheet for them in determining degree of limitation of function. But the term, markedly, is never defined on that form, so we don't know what the term - - and markedly is really not defined in the regulations, either. So, without some sort of definition to guide the VE, his answer would be entirely speculative, and I'm not allowing a response based on speculation.

ATT: All right. If you won't allow - -

ALJ: I'll hold the record open if you want to procure some sort of other opinion from this treating source, and give you 15 days to do so. But I've already explained to you why that form is deficient, and the reason it's deficient.

R. 457-59. The ALJ did not permit Claimant's attorney to ask a hypothetical question based on a form completed by Claimant's treating physician which purportedly showed Claimant had 12 marked limitations in psychiatric functioning. *Id*. Claimant's attorney then proceeded to ask the VE questions concerning absences and rest breaks. R. 459-62. The ALJ asked the following additional hypothetical question of the VE:

Assuming that the person missed one day of work a week because of the residual effects of alcoholism, and that they . . . either

weren't able to report to their work; or, if they went to work, they had to leave early because they were hung over or otherwise unable to do their job because of the residual effects of alcoholism. In addition to the other impediments that I asked you to previously consider, would this impact the person's ability to . . . do their past relevant work or other work?

. . .

Well, they're not leaving each day, but one day a week, or about four days a month, they're not able to do their work - - either because they can't get up to report to work because they have a problem with waking up because they had too much alcohol the night before; or, once they get to the job, after staying there a short period of time, they're forced to leave, again, because of the residual side effects of alcohol. Would this person be able to do their past work on that basis?

R. 463. The VE responded that such a person could not perform the past relevant work as described and would not be able to perform any other type of work. R. 463-64. The ALJ then concluded the hearing with the following statement:

Well, I mean, I have to ask because the [C]laimant does have a history of alcohol problems, and she obviously went back to drinking, you know, more recently, within the last month or so, so - - she claims that she stopped, but we do have a case, and I'd just remind Mr. Schwartz of the that 11th Circuit decision in [*Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001)]. Burden of proof in that respect is on the [C]laimant, not on the Commissioner. Several other circuits have fallen into step with that; most recently, the Ninth Circuit, earlier this year, in February, in [*Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007)]. So, that appears to be the consensus around the nation in terms of the alcohol situation. All right, well go ahead and hold the record open for 15 days for the submission of anything additional from the [C]laimant. . . .

R. 464-65.

On December 12, 2007, the ALJ issued an unfavorable opinion finding that "[b]ecause the [C]laimant would not be disabled if she stopped the substance abuse, the [C]laimant's substance abuse disorder(s) is a contributing factor material to the determination of disability,"

and, therefore, Claimant is not disabled.  R. 21. In his decision, the ALJ made the following

pertinent findings:

1. Claimant meets the insured status requirements of the Social Security Act through December 31, 2009;

2. Claimant has not engaged in substantial gainful activity since December 5, 2004, the alleged onset date;

3. Claimant has the following severe impairments: history of chronic alcohol abuse and anxiety disorder due to alcohol abuse, history of right breast cancer without metastases, history of COPD;

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including substance use disorder(s), the [C]laimant has the residual functional capacity ("RFC") to perform light work except she has occasional limitations bending, stooping, crouching, crawling, kneeling and climbing.  She has no other manipulative limitations apart from the fact that she is limited to the performance of overhead work involving the right arm on more than an occasional basis; she has no communicative impairments.  She can make simple decisions and interact with the general public, supervisors and co-workers on at least an occasional basis.  She must work in a temperature controlled environment and avoid concentrated amounts of atmospheric pollutants.  Due to the adverse effects of her alcohol abuse and the residuals associated with such alcohol abuse, she would likely miss one day of work per week;

6. Due to her continuing alcohol abuse, the [C]laimant is unable to perform past relevant work or any other work.  Considering the [C[laimant's [RFC], she cannot perform her past relevant work, or other jobs which exist in significant numbers in the national economy.  Therefore, the [C]laimant would be found disabled pursuant to Social Security Ruling 96-8p;

7. If [C]laimant stopped the substance abuse, the remaining limitations would cause more than a minimal impact on the [C]laimant's ability to perform basic work activities; therefore, the [C]laimant would continue to have a severe impairment or combination of impairments;

8. If [C]laimant stopped the substance abuse, the [C]laimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments [in the Listings];

9. If [C]laimant stopped the substance abuse, the [C]laimant would have the RFC to perform light work except she has occasional limitations bending, stooping, crouching, crawling, kneeling and climbing. She has no communicative impairments. She is limited to the use of her right arm to perform overhead type tasks to only an occasional basis. She can make simple decisions and interact with the general public, supervisors and co-workers on at least an occasional basis. She must work in a temperature controlled environment and avoid concentrated amounts of atmospheric pollutants;

10. If [C]laimant stopped the substance abuse, the [C]laimant would be able to perform past relevant work as a bus person and cleaner as she performed this latter occupation. This work does not require the performance of work-related activities precluded by the [RFC] the [C]laimant would have if she stopped the substance abuse; and

11. Because the [C]laimant would not be disabled if she stopped the substance abuse, the [C]laimant's substance use disorder(s) is a contributing factor material to the determination of disability. Thus, the [C]laimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

R. 13-21. At step-two of the five step sequential process described below, the ALJ stated the following regarding Claimant's impairments:

> Records form John Ortolani, M.D. indicate that the [C]laimant's condition improved with therapy. The [C]laimant had a psychological evaluation by Jeff Oatley, Ph.D. in May 2005. The [C]laimant reported right arm pain and life long anxiety. She reported that she has not sought mental health treatment in outpatient counseling and reported long standing alcohol problems. She was diagnosed with alcohol dependence as indicated by her history of long standing alcohol abuse, alcohol abuse related anxiety and nicotine dependence. The [C]laimant reported not wanting to talk to anybody but indicated that she had no difficulty completing routing household chores and indicated that she enjoyed watching movies.
>
> The [C]laimant was evaluated by James Shoemaker, D.O. in May of 2005. She was diagnosed with lateral epicondylitis of the right elbow, history of right arm pain and history of right carpal tunnel syndrome.
>
> The [C]laimant had a psychological evaluation with William Friedenberg, Ph.D. in March of 2006. The [C]laimant indicated

that she drinks up to a six pack of beer when she is abusing and admitted that her last drink was 2-3 days prior to this examination. She was diagnosed with: anxiety disorder, depressive disorder, and rule out a bipolar and personality disorder NOS. Her polysubstance dependence was in reported sustained full remission, which conclusion is directly contradicted by the [C]laimant's history taken by this examiner which clearly indicated that she continues to abuse alcohol as late as several days prior to this psychological evaluation.

The [C]laimant presented to Halifax Medical Center in October of 2006 and complained of anxiety [and] of depression. The [C]laimant admitted that she had a similar problem approximately one year ago and had been told to follow up with her family physician but did not. Records indicate that the [C]laimant was diagnosed with breast cancer in March of 2007 and underwent a right breast lumpectomy and lymph node biopsy. In May of 2007, she was noted to be medically ready for chemotherapy.

Records from June of 2007 indicate that [C]laimant was recently incarcerated and was drinking heavily. She reportedly tolerated her first cycle of chemotherapy well. She had nausea and vomiting but it was controlled with Compazine.

Medical records from Stephen Oh, M.D., were reviewed. Dr. Oh indicated in January of 2007 that the [C]laimant had a six-pack of beer every evening. He noted that she was anxious with fair judgment and insight. He diagnosed a generalized anxiety disorder, ADHD and alcohol abuse. He prescribed medication, told her to exercise and stop drinking. The next month, the [C]laimant indicated that she was doing better, but still felt unhappy and irritable. Her judgment and insight was described as good. The undersigned notes that the [C]laimant had family/boyfriend issues during this time, so unhappy emotions would not be unusual.

Records from the licensed mental health worker indicate in May of 2007 that the [C]laimant was very pleasant and moderately anxious. She reported problems with her ex-husband and anxiety around her cancer treatment. Later that month, the [C]laimant

> indicated again that she was fighting with her ex-husband and expressed worry over medical bills and not being able to drive. The counselor asked about getting her assistance with transportation and the [C]laimant indicated that friends drove her around. She also indicated at one point that a friend had invited her to come stay with her up north. The undersigned notes this because, at the hearing, the [C]laimant claimed to have no friends.
>
> Applying the Psychiatric Review Technique, the undersigned finds that the [C]laimant's mental limitations result in mild restriction of activities of daily living, mild difficulties in maintaining social functioning and mild difficulties in maintain concentration, persistence or pace. She has never experienced an episode of decompensation of extended duration and she does not have a mental impairment that satisfies the "C" criteria of the mental listings. <u>This finding is supported by the opinion of the state agency psychologist consultant who opined and found the [C]laimant had no other mental impairments absent her long history of alcohol abuse (Exhibits 4F and 8F).</u>

R. 16-17 (emphasis added). Exhibit 4F is the PRT completed by non-examining state agency consultant Dr. Davis. R. 169-81; *see also* supra pp. 12-14. Exhibit 8F is the PRT completed by non-examining state agency consultant Dr. Green. R. 211-23; *see also* supra pp. 14-15. Thus, the ALJ relied exclusively on the opinions of two non-examining state agency consultants when determining Claimant's functional limitations cause by her mental impairments.

Regarding Claimant's purported alcohol abuse, its affect on her impairments, her credibility, and the weight given to the various records and opinions, the ALJ stated the following in pertinent part:

> The [C]laimant clearly has a history of chronic alcohol abuse and alcohol induced anxiety disorder. As noted earlier in this decision, state agency psychological consultants opined that the [C]laimant had no "severe" mental impairment apart from her alcohol abuse disorder. The consultative examination by Dr. Shoemaker in May of 2005 was notable only for some epicondylitis of her right elbow. The state agency initial RFC opinion indicated that the [C]laimant

had an ability to do medium work. The same conclusion was noted at the reconsideration level. The [C]laimant saw Dr. Friedenberg at her attorney's request in March of 2006. He diagnosed an anxiety disorder but noted a long history of polysubstance abuse in remission, despite the fact that the [C]laimant admitted to this examiner that she was still abusing alcohol. As noted earlier, the [C]laimant indicated that she drank up to a six pack of beer when she was abusing and admitted that her last drink was 2-3 days prior to this examination. This report was inconsistent with Dr. Oatley's report where he diagnosed alcohol dependence as indicated by her long standing alcohol abuse, alcohol abuse related anxiety and nicotine dependence. Accordingly, the undersigned accords Dr. Friedenberg's report little weight.

The [C]laimant has some mild osteoarthritis in the right knee. Dr. Stephen Oh (psychiatrist) saw the [C]laimant in February of 2007 and felt she had moderate impairment (GAF of 60) secondary to her generalized anxiety disorder. His [RFC] from May of 2007 is completely inconsistent with his own clinical observations. Accordingly, it is completely rejected.

The [C]laimant was found to have some right breast carcinoma but follow-up studies following treatment showed no evidence of any recurrent disease. The [C]laimant's chemotherapy is progressing without problems and the [C]laimant has not required any significant treatment related to adverse side effects associated with this treatment regimen.

The undersigned carefully reviewed Dr. Oh's most recent mental [RFC] and cannot accept it. It is internally inconsistent and not supported by his own clinical observations. Dr. Oh indicated that the [C]laimant had extreme limitations carrying out detailed instructions and had marked limitations: understanding and remembering detailed instructions, making judgments on simple work-related decisions, responding appropriately to changes and pressure in routine work setting. The undersigned finds this opinion absolutely unsupported by Dr. Oh's own treatment notes. As described earlier in this decision, Dr. Oh's notes from January and February 2007 reveal nothing that would support his dire [RFC] opinion. The [C]laimant had good judgment and insight

and, although she certainly had stressors, she did not indicate an inability to carry out simple instructions or make judgments on such simple work related matters.

Regarding the [C]laimant's breast cancer, there is no metastasis according to her treating oncologist.  Her claim of mood swings is not consistent with her own prior statements.  She continues to drink alcohol on a daily basis and has done so for many years.  She has not carried her burden under the 11th Circuit decision in [*Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001)] and I find that her alcohol abuse only exacerbates any underlying anxiety that she may have.  Absent her alcohol abuse, she could return to her past relevant work as both of these jobs are unskilled and clearly within her credible [RFC] absent her continuing alcohol abuse.

. . .

The [C]laimant testified that she has depression, anxiety, carpal tunnel syndrome and left foot problems, lung cancer and that she receives chemotherapy and has psychiatric problems.  Regarding her knee problems, she testified that she is too busy with chemotherapy to get treatment and she does not have money for treatment anyway.  She said that she had "bone rubbing bone" and previously look Lortab.  Regarding her breast cancer, the [C]laimant indicated that she required 7-8 treatments and she had completed 3 so far, doing them twice a month.  She explained that she would then need radiation and medication for 5 years.

The [C]laimant indicated that she watches television and reads and plays bingo once per week at the VFW.  She indicated that she is depressed and chemotherapy makes her tired.  She indicated that she has good days and bad days, which included mood swings and she explained that her right arm hurts where she had her lymph nodes removed.  She testified that she uses the bus to see her mental health doctor or his mental health worker.

If the [C]laimant stopped the substance abuse, the undersigned finds that the [C]laimant's remaining medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely credible.

> While the [C]laimant clearly has some functional limitations as reflected in the above noted [RFC], the undersigned finds that there is nothing in the medical evidence to support her allegations that she is totally disabled. The [C]laimant has not reported significant mood swings to her mental health providers. She has proven to be quite able to manage her cancer treatment, negotiate her way to doctor's appointments using public transportation, she can concentrate well enough to play bingo every week and entertains herself with watching television and reading books. The [RFC], as accessed above, allows for the [C]laimant's complaints of right arm pain. The [C]laimant has not required treatment for her carpal tunnel syndrome during the relevant time period and the undersigned finds this to not cause any specific limitations. Regarding the [C]laimant's knee pain, it does not keep her from exercising/walking as noted several time in the medical records; therefore, it should not limit her ability to perform at least light work, including her past relevant work.

R. 18-21 (emphasis added). Thus, the ALJ rejected both of Dr. Oh's medical source opinions because they were "absolutely unsupported" by his treatment notes, gave little weight to Dr. Friedenberg's report, found Claimant's subjective testimony not entirely credible, and found that if Claimant stopped abusing alcohol, she could return to her past relevant work. *Id*.

Claimant timely requested review of the ALJ's decision before the Appeals Council. R. 8-9. On February 9, 2008, Claimant presented written argument and purportedly new evidence to the Appeals Council. R. 409-413. Claimant argued that the Appeals Council should grant review of the ALJ's decision because new and material evidence existed which rendered the ALJ's decision contrary to the weight of the evidence. R. 412-13. More specifically, a January 31, 2008, a questionnaire completed by Dr. Oh finding Claimant was unable to work and that alcoholism is not a material contributing factor to Claimant's disability. R. 409-11. The questionnaire asked Dr. Oh various questions about Claimant's condition and limitations, and

asked Dr. Oh to check a "yes" or "no" box" for each question and to circle each specific symptom that applied. R. 409-411. Although all questions are answered, Dr. Oh did not circle any symptoms that applied to the various questions. R. 409. Dr. Oh opined that Claimant suffers from depressive syndrome without marked restrictions of activities of daily living, irrational fears, severe panic attacks, or marked obsessions. R. 409-10. Dr. Oh found marked limitations in maintaining social functioning, concentration, persistence, and/or pace, ability to complete a normal workday and workweek due to her symptoms, ability to work in coordination with others, ability to accept instructions and respond appropriately to criticism, and ability to get along with coworkers and the general public. R. 409-10. Dr. Oh also found Claimant suffers from generalized persistent anxiety. R. 410. Dr. Oh opined that Claimant was unable to perform even sedentary work and that alcoholism is not a contributing factor material to Claimant's ability to work. R. 410. Dr. Oh further opined that Claimant's impairments existed on December 5, 2004. R. 410. Thus, Dr. Oh agreed with Claimant's contention she is totally disabled. *Id.*

On June 9, 2008, the Appeals Council denied review stating that it had "considered the reasons you disagree with the decision . . . and the additional evidence . . . [but] [w]e found that this information does not provide a basis for changing the [ALJ's] decision." R. 4-5. On July 3, 2008, Claimant timely filed an appeal in this Court. Doc. No. 1. On November 10, 2008, Claimant filed a memorandum in support of her position on appeal. Doc. No. 13. On January 9, 2009, the Commissioner filed a memorandum in support of the Commissioner's final determination. Doc. No. 14. The appeal is now ripe for review.

## III.  THE PARTIES' POSITIONS

Claimant assigns four errors to the Commissioner's decision: 1) the ALJ erred at steps two and four of the sequential process by failing to provide any reasons for giving no weight to Dr. Oh's opinion that Claimant suffers from depression and ADHD, the ALJ's reasons for rejecting Dr. Oh's ultimate opinions are inaccurate and not supported by substantial evidence, and sole reliance on the opinions of a non-examining physicians do not constitute substantial evidence to support a disability finding (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990)); 2) the ALJ's determination that Claimant could return to her past relevant work if she stopped abusing alcohol is not supported by substantial evidence, namely the records lacks substantial evidence that Claimant abuses alcohol and there is no evidence that Claimant's anxiety is caused by alcoholism; 3) the ALJ violated Claimant's due process rights by denying cross-examination of the VE by her attorney regarding an RFC form completed by Claimant's treating physician (citing 20 CFR §404.950(e); *Marin v. Commissioner of Social Security*, 6:07-cv-461-Orl-31GJK, 535 F.Supp.2d 1263, 1264-65 (M.D. Fla. Feb. 28, 2008)); and 4) the Appeals Council erred as a matter of law by denying review.  Doc. No. 13 at 1-25. Claimant requests that the Court reverse the Commissioner's decision and to remand the case to the Commissioner for an award of benefits or, in the alternative, remand the case for a de novo rehearing.  Doc. No. 12 at 24-25.

The Commissioner argues that substantial evidence supports his decision to deny Claimant's claims for a period of disability and disability insurance benefits.  *See generally* Doc. No. 14 at 1-13.  The Commissioner maintains that: 1) the ALJ had good cause to reject the opinions of Dr. Oh because they were inconsistent with his own treatment notes and substantial

evidence supports the ALJ's ultimate decision; 2) record evidence exists showing Claimant abused alcohol and Claimant failed to meet her burden that she would still be disabled if she stopped abusing alcohol (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)); 3) because the ALJ properly discounted Dr. Oh's opinions regarding Claimant's mental limitations and did not rely on those opinions in determining Claimant's RFC, Claimant suffered no prejudice and, as such, there was no violation of Claimant's due process rights (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Gordon v. Astrue*, 249 Fed.Appx. 810, 813 (11th Cir. 2007) (unpublished)); and 4) the Appeals Council considered Dr. Oh's questionnaire and properly determined that no reasonable possibility existed that it would change the ALJ's decision because substantial evidence still supported the ALJ's determination. Doc. No. 14 at 1-13. Therefore, the Commissioner maintains the Court should affirm the decision below. Doc. No. 14 at 14.

## IV.  LEGAL STANDARDS

### A.  THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work

activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  20 CFR § 404.1521.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and

in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A mere diagnosis is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987). A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his

ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical

exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

**B.** **THE STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d

1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[5]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material —  relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d

---

[5] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994). A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.[6]

## V. ANALYSIS OF ALLEGED ERRORS

### A. Whether Erred Weighing Dr. Oh's Opinions

Claimant assigns three related errors to the ALJ's treatment of Dr. Oh's opinions. First, Claimant argues that the ALJ erred at steps two and four of the sequential process by failing to provide reasons for giving no weight to Dr. Oh's diagnoses and opinions that Claimant suffers from depression and ADHD. Doc. No. 13 at 17. Second, the ALJ's determination that Dr. Oh's opinions were inconsistent with his own treatment records is inaccurate and not supported by the evidence. *Id.* at 18. Third, after rejecting the opinions of Dr. Oh, the ALJ erred by exclusively relying on the opinions of a non-examining state agency consultants to determine Claimant's mental limitations. *Id.* at 19 (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990) ("Because Dr. Hibbert did not examine [the claimant], his opinion is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision.")).

The Commissioner maintains that good cause existed to discount or to give no weight to Dr. Oh's opinions because they are inconsistent with his own treatment notes and substantial evidence supports the ALJ's decision the whole. Doc. No. 14 at 6-7.

Weighing the opinions and findings of treating, examining, and non-examining

---

[6] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Id.* The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ stating the specific weight given to different medical opinions and the reasons therefor, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[7] Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel.*

---

[7] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

*Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).  However, a conclusory statement from a treating physician that a claimant is disabled from working is not a medical opinion and is a determination reserved to the Commissioner.  *See* 20 CFR § 404.1527(e) (2006).

First, the ALJ found that Claimant suffers from the severe mental impairments of a history of chronic alcohol abuse and anxiety disorder due to alcohol abuse.  R. 16.  At step two, the ALJ reviewed Claimant's mental health records from Drs. Oatley, Friedenberg, and Oh, as well as records from Halifax Medical Center.  R. 16-17.  However, in reaching his determination that Claimant's mental impairments "result in mild restriction of activities of daily living, mild difficulties in maintaining social function and mild difficulties in maintaining concentration, persistence or pace," the ALJ relied exclusively on the opinions of two non-examining state agency consultants.  R. 17.  The ALJ specifically cites to the PRTs completed by Drs. Davis and Green after making his determination regarding the limiting effects of Claimant's mental health impairments.  R. 17.   As set forth above, the opinions of non-examining physicians are not substantial evidence when standing alone and do not provide the good cause necessary to reject the opinions of treating or examining physicians.  See *Johnson,* 138 Fed.Appx. at 269; *Spencer*, 765 F.2d at 1094.

On May 7, 2007, Dr. Oh's treatment records diagnose anxiety.  R. 403.  On June 29, 2007, Dr. Oh's assessment is depression.  R. 402.  On July 13, 2007, Dr. Oh opined that Claimant is moderately, markedly, or extremely limited in nearly all areas of functioning due to her severe attention deficit disorder, panic disorder, and impulse control disorder.  R. 407.  Dr. Oh also opined that Claimant's alcohol abuse does not contribute to any of her limitations.  R. 408.  While a "diagnosis alone is an insufficient basis for a finding that an impairment is severe,"

the ALJ did not have substantial evidence supporting his decision, at step two, to adopt the opinions of the non-examining state agency consultants over the treatment records and opinions of Dr. Oh. *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); R. 16-17. As set forth above, the opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). Thus, the undersigned recommends that the Court find the ALJ erred at step two of the sequential process by exclusively relying on the opinions of two non-examining state agency consultants in determining the Claimant's severe impairment of alcohol induced anxiety disorder.

Second, at step four, the ALJ rejected Dr. Oh's opinions because they are "absolutely unsupported by [his] treatment notes." R. 19. The ALJ's stated reasons for finding Dr. Oh's treatment notes inconsistent with his dire opinion are because "from January and February 2007, [his notes] reveal nothing that would support his [RFC]." R. 19. On January 11, 2007, Dr. Oh diagnosed Claimant with generalized anxiety disorder, ADHD, and alcohol abuse and his treatment notes reveal that she consumes a six pack of beer in one evening. R. 240, 244. Dr. Oh noted that Claimant was depressed, anxious, her attention and concentration were impaired, and her judgment and insight were only fair. R. 243. On February 12, 2007, Claimant appeared depressed and anxious, she had poor attention and cognition, but her judgment and insight were noted as "good." R. 233. Dr. Oh's assessment was depression. R. 238. As set forth above, Dr. Oh's May 30, 2007 mental RFC found Claimant was markedly limited in several areas including her ability to understand and remember detailed instructions, maintain attention and

concentration, perform activities within a schedule, maintain regular attendance, make simple work related decisions, and accept criticism from supervisors.  R. 311-12.  Dr. Oh stated that these limitations were caused by psychologically based symptoms.  R. 311-12.  On July 13, 2007, Dr. Oh opined that Claimant was extremely limited in her ability to carry out detailed instructions; markedly limited in her ability to make judgments on simple work-related decisions, and in her ability to understand and remember detailed instructions; and moderately limited in her ability to carry out simple instructions.  R. 407.  Dr. Oh stated his opinions were based on Claimant's "severe attention deficit disorder, panic disorder, and impulse control disorder."  R. 407. Dr. Oh also stated that Claimant's alcohol abuse does not contribute to any of these limitations.  R. 408.  After carefully comparing Dr. Oh's treatment notes, specifically those notes cited by the ALJ, the undersigned concludes that Dr. Oh's opinions are not "absolutely unsupported" by his treatment notes.  The only reason provided by the ALJ for rejecting Dr. Oh's opinions is that they are inconsistent with his treating notes.  R. 19.  Therefore, the undersigned recommends that the Court find the ALJ lacked good cause to reject the opinions of Dr. Oh and this error warrants reversal.

## B.  Whether Claimant's Due Process Rights Were Violated

Claimant argues that the ALJ violated her due process rights by denying her attorney the ability to cross-examine the VE regarding Dr. Oh's Mental RFC assessment.  Doc. No. 13 at 12-16 (citing *Marin v. Commissioner of Social Security*, 535 F.Supp.2d 1263 (M.D. Fla. 2008); 20 CFR § 404.950(e)).[8]  Claimant asserts that the ALJ violated her due process rights for three reasons.  First, Claimant maintains that the ALJ denied her counsel the right to ask the VE about

---

[8] Section 404.950(e) provides that the ALJ may ask a witness any questions material to the issues and "shall allow the parties or their designated representative to do so."  20 C.F.R. § 404.950(e).

Dr. Oh's Mental RFC because the term "marked" was not defined on the form, but when posing his own hypothetical question to the VE the ALJ relied on the state agency consultants' opinions that Claimant's mental impairments were mild when the term "mild" is similarly not defined on the forms. Doc. No. 13 at 13-14. Second, Claimant contends that contrary to the ALJ's statement, the term "marked" is defined in the regulations and the ALJ erred by not permitting Claimant's attorney to question the VE concerning a report containing said term. Doc. No. 13 at 14-15. Third, Claimant asserts that after the ALJ erred by not reconvening the hearing and allowing Claimant to continue her cross examination of the VE after obtaining a clarified opinion from Dr. Oh that defined the term "marked." Doc. No. 13 at 15-16 (citing R. 406-408).

The Commissioner maintains that Claimant suffered no prejudice by the ALJ's refusal to allow cross-examination regarding Dr. Oh's Mental RFC because the ALJ ultimately rejected Dr. Oh's opinions. Doc. No. 14 at 11-13 (citing *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997); *Gordon v. Astrue*, 249 Fed.Appx. 810, 813 (11th Cir. 2007) (unpublished)). It is undisputed that the ALJ denied Claimant to cross-examine the VE regarding Dr. Oh's Mental RFC.

In *Marin*, 535 F.Supp.2d at 1264, the ALJ prohibited a claimant from asking any questions other than hypothetical questions to the VE. *Id*. In *Marin*, the claimant attempted to question the VE about the basis for the statistics upon which she was relying, but the ALJ prevented the claimant from asking anything but hypothetical questions. *Id*. When the claimant could not obtain the information sought through a hypothetical question, the ALJ concluded the hearing. *Id*. This Court reversed, holding that "[i]t is indisputable that the ability to cross-examine witnesses is fundamental to due process." *Id*. at 1265 (citing *Goldberg v. Kelly*, 397 U.S. 254, 269 (1969)). "The ALJ's decision to restrict cross-examination of the vocational

expert witness to hypothetical questions was arbitrary and prevented [the claimant's] counsel from conducting meaningful cross-examination." *Id*. at 1265. This Court noted that the ALJ's decision relied on the VE's testimony and that testimony had been untested. *Id*. Therefore, the limitations the ALJ placed on the cross-examination in *Marin* were clearly prejudicial. *Id*. Claimant asserts that *Marin* is factually and legally analogous to the present case and necessitates the same result. Doc. No. 13 at 13-16.

The Commissioner relies on *Graham*, 129 F.3d at 1421-23, and *Gordon*, 249 Fed.Appx. at 812-13, for the proposition that no due process violation occurred in this case because Claimant suffered no prejudice. In *Graham*, 129 F.3d at 1421-23, claimant's counsel was not notified of the hearing by the Social Security Administration or the ALJ and the claimant argued that her due process rights were violated. *Id*. The Eleventh Circuit held that "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Id* at 1423. The Eleventh Circuit cautioned that a reviewing court "should be guided by whether the record reveals evidentiary gaps which result in unfairness of 'clear prejudice.'" *Id*. Ultimately, the Court noted that disability hearings are non-adversarial and held that the claimant suffered no prejudice because the ALJ fully developed a complete record through questioning and there were no evidentiary gaps in the record. *Id*.

In *Gordon*, 249 Fed.Appx at 811, the claimant argued that the ALJ violated her due process rights by denying her counsel the opportunity to pose her own desired hypothetical question to the VE. *Id*. The Eleventh Circuit noted that an ALJ is not required to include findings in hypothetical question which the ALJ determines are not supported by the evidence.

*Id.* at 813 (citing *Crawford v. Commissioner*, 363 F.3d 1155, 1161 (11th Cir. 2004)). The Court

stated that in order to establish a due process violation there "'must be a showing of prejudice.'"

*Id.* (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).  In *Gordon*, the Eleventh

Circuit ultimately held:

> The hypothetical questions posed to the vocational expert by the
> ALJ were consistent with the medical evidence and other evidence
> on the record that the ALJ found to be credible. The hypothetical
> was a comprehensive summary of the combination of Gordon's
> physical and mental impairments. Moreover, although the ALJ
> restricted the phrasing of Gordon's hypothetical question on cross-
> examination of the vocational expert so that the raw medical data
> would be expressed in terms of a mental residual functioning
> capacity, her due process rights were not violated because she still
> had a meaningful opportunity for cross-examination.

*Id.* at 813.

In this case, the ALJ would not permit Claimant to ask any questions relating to the

mental RFC completed by Dr. Oh (R. 311-14).  R. 457-459.  The ALJ's stated reasons for

preventing the questioning were that the term "marked" was not defined in the form or in the

regulations.  R. 459.  The undersigned notes that the PRTs relied upon by the ALJ in his

hypothetical to the VE also do not define the term "marked."  R. 179, 221.  Moreover, the term

"marked," contrary to the ALJ's statements during the hearing, is defined in the regulations.  20

CFR 404 Subpart P, App. 1 § 12.00(c).  The regulations states:

> Where we use "marked" as a standard for measuring the degree of
> limitation, it means more than moderate but less than extreme.  A
> marked limitation may arise when several activities or functions
> are impaired, or even when only one is impaired, as long as the
> degree of limitation is such as to interfere seriously with your
> ability to function independently, appropriately, effectively, and on
> a sustained basis.

*Id.* Thus, the ALJ's statement that the regulations do not define the term is a misstatement of the

regulations.

The issue is whether or not Claimant was prejudiced by the ALJ's actions. In *Marin*, the claimant sought to challenge the credibility of the VE's testimony by questioning the basis of the statistics used by the VE in forming his opinion. *Id*. at 1264. In the present case, Claimant was not seeking to challenge the credibility of the VE's testimony, but seeking to elicit substantial evidence through the VE's testimony that there were no jobs existing in the national economy that Claimant could perform based on the limitations contained in Dr. Oh's opinion. As set forth above, Dr. Oh's opinions were improperly rejected by the ALJ. Therefore, by improperly rejecting Dr. Oh's opinions and denying Claimant the ability to elicit testimony from the VE based on those opinions, the ALJ effectively prevented Claimant from obtaining substantial evidence that there are no jobs existing in the economy which she could perform. Accordingly, there is a gap in the evidentiary record and Claimant has suffered prejudice. Based on the forgoing, the undersigned recommends that the Court find Claimant's due process rights were violated.

## VI. <u>CONCLUSION</u>

Based on the above stated reasons, the undersigned **RECOMMENDS** that the Court:

1) **REVERSE and REMAND** the final decision of the Commissioner pursuant to sentence four of section 405(g);

2) Direct the Clerk to enter a separate judgment in favor of the Claimant; and

3) Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within **eleven (11) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on August 21, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Richard A. Culberston
3222 Corrine Drive, Suite E
Orlando, FL 32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Richard V. Blake, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920


The Honorable John D. Thompson
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Desoto Building #400

8880 Freedom Crossing
Jacksonville, FL 32256-1224